IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAMUEL L. WHITESIDE, #24366-038,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>KATHY HILL, DAN SPROUL,  )<br>J. LeCLAIR, GUY PAGLI,  )<br>KATHERINE SIEREVELD,  )<br>MICHAEL D. CARVAJAL,  )<br>RUSSELL WYATT, and  )<br>MIRANDA FAUST,  )<br>)<br>Defendants.  ) | Case No. 21-806-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Samuel Whiteside is an inmate in the custody of the Federal Bureau of Prisons ("BOP"), currently incarcerated at the United States Penitentiary in Marion, Illinois (USP-Marion). He filed a Complaint in the Circuit Court for the First Judicial Circuit, Williamson County, in the State of Illinois, seeking damages and injunctive relief against Defendants for blocking all communication between him and his common law wife.[1] Plaintiff raises First Amendment freedom of speech and Fifth Amendment due process and equal protection claims, invoking *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). (Doc. 1-1, pp. 6-8). He also raises claims under Illinois law for conspiracy, negligence, and intentional infliction of emotional distress. (Doc. 1-1, p. 9). The state court granted Plaintiff's application for waiver of the court fees. (Doc. 1-1, pp. 13-18).

---

[1] Plaintiff asserts that because he is being held in Marion's Communications Management Unit ("CMU"), the only means of communication he has with his common law wife is via letters; he is not permitted to have telephone or email contact with her. (Doc. 1-1, p. 9).

1

### REMOVAL AND SUBSTITUTION OF UNITED STATES AS DEFENDANT

Defendants removed the case to this Court pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, a federal statute commonly known as the "Westfall Act," 28 U.S.C. § 2679, and alternatively under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (Doc. 1). Plaintiff raised no objection to the removal. For actions commenced in state court, as here, the Westfall Act calls for removal to the federal district court "embracing the place in which the action or proceeding is pending," which here is Williamson County, Illinois. *See Osborn v. Haley*, 549 U.S. 225, 230 (2007) (citing 28 U.S.C. § 2679(d)(2)). Section 1442(a)(1) applies to officers of the United States who are sued in their official or individual capacity for acts under color of such office. The underlying case was properly removed to this federal judicial district under both statutes.

Defendants have moved to substitute the United States of America as Defendant and dismiss them from the action, at least for those claims that arise under Illinois law and are not construed as *Bivens* claims. (Doc. 6). Plaintiff responds that he does not have any objection to such substitution for Counts 7-9 of his Complaint, which are based on state law. (Doc. 9, pp. 1-2). However, he maintains that the United States is not the proper Defendant for Counts 1-6, which are brought pursuant to *Bivens*. *Id.* The Court agrees with Plaintiff.

The Westfall Act grants federal employees absolute immunity from *tort* claims arising out of acts undertaken in the course and scope of a federal employee's employment. *See Osborn*, 549 U.S. at 230 (citing 28 U.S.C. § 2679(b)(1)). It amended the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80, to require substitution of the United States as a defendant in a tort suit brought against a government employee. *Id.* at 230. It empowers the Attorney General to certify that a federal employee sued for wrongful or negligent conduct "was acting within the scope

of his office or employment at the time of the incident out of which the claim arose," and renders the Attorney General's certification[2] "conclusiv[e]…for purposes of removal." *Id*. (citing 28 U.S.C. §§ 2679(b)(1), (d)(1), (2)). Upon such certification, the United States is substituted as defendant in place of the federal employee, and the employee is dismissed. *Id*. (citing § 2679(d)(2)). The action is then governed by the FTCA.

This action contains both tort claims based on state law and *Bivens* claims. Substitution of the United States is not proper for the *Bivens* claims in Counts 1-6, therefore, the individual Defendants will remain named in those claims. As to the state tort claims, however, the United States Attorney's designee certified that all the individual Defendants were federal employees acting within the scope of their federal office or employment at the time of the events giving rise to the Complaint. (Doc. 1-2). Accordingly, the United States will be substituted as the sole Defendant for the tort claims in Counts 7-9, in place of the individual Defendants. Counts 7-9 will be governed by the FTCA.

The Complaint is subject to preliminary review pursuant to 28 U.S.C. § 1915A.

### MERITS REVIEW OF THE COMPLAINT

Because Plaintiff is a prisoner, the Court is required to screen his Complaint pursuant to 28 U.S.C. § 1915A to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

Plaintiff makes the following allegations in his Complaint (Doc. 1-1): He has been held in the CMU at Marion since December 2020, where all his incoming and outgoing correspondence,

---

[2] A United States Attorney may issue the certification in lieu of the Attorney General. *See* 28 C.F.R. § 15.4(a). In the instant case, the United States Attorney delegated this authority to the Chief of the Civil Division, who certified that all Defendants were acting with the scope of their employment at the time of the incidents out of which the claims arose. (Doc. 1-2).

emails, and phone calls are monitored by BOP staff, including Marion Intelligence Research Specialist Hill, Counter Terrorism Unit Chief Pagli, and his staff members Faust and Wyatt.[3] (Doc. 1-1, p. 6). Throughout the eight years Plaintiff has been in custody, he has been communicating with his girlfriend/common-law wife, Sancheska, who has no criminal record. No problems had arisen with their correspondence until late May-early June 2021, when Sancheska mailed Plaintiff several letters from other incarcerated persons; she was unaware that this ran afoul of prison rules. (Doc. 1-1, p. 6). Defendants Hill, Wyatt, Pagli, and Faust reviewed the letters and determined that Plaintiff should thereafter be banned from corresponding with Sancheska. The ban includes both incoming mail from Sancheska and outgoing mail to her from Plaintiff. (Doc. 1-1, p. 7). Defendants Siereveld (BOP Attorney-Advisor), Marion Warden Sproul, and Associate Warden LeClair reviewed and concurred with the recommendation to impose the ban. Plaintiff was not informed of their decision and learned of it only when he reviewed his contact list on or about June 8, 2021 and noticed Sancheska was blocked as a contact.

  Plaintiff contacted Hill, asking for an explanation of the ban and why he had not been given notice and an opportunity to contest it. Hill explained the reason for the block but did not explain why there had been no notice or opportunity to respond. Hill further informed Plaintiff that the block is permanent and will not be removed for the duration of his prison term.

  Plaintiff, who is African-American, learned that a fellow inmate in the CMU who is white had an identical experience where his girlfriend tried to send him correspondence from another jail inmate. (Doc. 1-1, pp. 6-7). Hill called that inmate into her office, gave him a verbal warning, and instructed him to tell the girlfriend not to do that again or she would be blocked as a contact. The incident was not repeated, and the other inmate is still allowed to communicate with his

---

[3] The Counter Terrorism Unit and these Defendants are located in Martinsburg, West Virginia. (Doc. 1-1, p. 5).

girlfriend. (Doc. 1-1, pp. 7, 12).

Plaintiff sues each Defendant in his/her individual capacity for damages, and in his/her official capacity for injunctive relief. (Doc. 1-1, p. 5). He names BOP Director Carvajal only in connection with Count 6 which challenges the policy prohibiting BOP inmates from receiving correspondence from other federal detainees. (Doc. 1-1, p. 8).

Based on the allegations in the Complaint, the Court adopts Plaintiff's designation of the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | First Amendment freedom of speech claim for damages under *Bivens*, against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust, for violating Plaintiff's right to correspond with Sancheska. |
| Count 2: | First Amendment freedom of speech claim for injunctive relief against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust, declaring their block of correspondence with Sancheska to be a violation of Plaintiff's rights and ordering these Defendants to unblock Sancheska on his contact list. |
| Count 3: | Fifth Amendment due process claim for damages against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust, for blocking his correspondence with Sancheska without giving Plaintiff notice or opportunity to contest the block. |
| Count 4: | Fifth Amendment due process claim for injunctive relief against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust based on the violation in Count 3, ordering Defendants to unblock correspondence with Sancheska and ordering them to immediately notify Plaintiff in the future should they decide to block a contact. |
| Count 5: | Fifth Amendment equal protection claim for damages against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust, for blocking Plaintiff's contact when a similarly situated white inmate was only given a warning, treating Plaintiff differently because of his race. |
| Count 6: | First Amendment "Overbreadth" claim for injunctive relief against Carvahal (BOP Director) seeking an order striking down the written or unwritten policy prohibiting BOP inmates from receiving letters from state and federal pretrial detainees held in county jails as overbroad and unconstitutional. |

Count 7:    Civil Conspiracy claim for damages under Illinois state law against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust for conspiring to unlawfully prevent Plaintiff from communicating with Sancheska and blocking her without providing Plaintiff with notice and an opportunity to be heard.

Count 8:    Negligence claim for damages under Illinois state law against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust for breaching their duty to refrain from unlawfully blocking Plaintiff's contact with Sancheska and breaching their duty to provide Plaintiff with due process in the form of notice of their action.

Count 9:    Intentional Infliction of Emotional Distress claim for damages under Illinois state law against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust for arbitrarily blocking communication between Plaintiff and Sancheska, who is his common law wife, caregiver of his sickly mother and his daughter, his emergency contact, his release address, and his main contact with the outside world. Plaintiff's loss of all means of contact with Sanchescka has caused him extreme distress, which Defendants knew and intended would result.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[4]

## DISCUSSION

The Supreme Court in *Bivens* recognized an implied right of action for money damages for the violation by federal officers of the Fourth Amendment right to be free of unreasonable search and seizure. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397 (1971). *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers." *King v. Fed'l Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). However, *Bivens* actions are not coextensive with § 1983 damage suits. As the Supreme Court explained in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017), it has

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

recognized only two other implied damages remedies for constitutional violations: a gender discrimination/equal protection claim under the Fifth Amendment in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim for inadequate medical treatment in *Carlson v. Green*, 446 U.S. 14 (1980). The *Abbasi* Court held that federal courts should not expand *Bivens* claims for damages into contexts not officially recognized by the Supreme Court, unless certain "special factors" counsel otherwise. *Abbasi*, 137 S. Ct. at 1859-60.

### First Amendment Claims - Counts 1, 2, and 6

*Count 1*

Plaintiff's First Amendment claim for money damages may not be cognizable under *Bivens* and *Abbasi*. The United States Supreme Court has "never held that *Bivens* extends to First Amendment claims." *See White v. True*, 833 F. App'x 15, 18 (7th Cir. 2020) (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)) (upholding district court's decision to dismiss First Amendment claim brought pursuant to *Bivens* at screening without further briefing). However, without the benefit of briefing on this issue, the Court is reluctant to dismiss Plaintiff's First Amendment *Bivens* claim at this early stage. *See Smadi v. True*, 783 F. App'x 633, 634 (7th Cir. 2019) (reversing threshold dismissal of First Amendment claim and remanding for further counseled proceedings). After remand and briefing, this Court determined that under *Abbasi*, Smadi's First Amendment claim for damages for restrictions on his incoming and outgoing correspondence was not viable post-*Abbasi*. *Smadi v. True*, No. 18-cv-2149-JPG, 2021 WL 2853262, at *3-7 (S.D. Ill. July 8, 2021). That case involved the inmate's attempts to correspond with an attorney, the Jordanian ambassador, and a journalist regarding his criminal case. However, the instant case involves correspondence between Plaintiff and a family member. Whether this claim is foreclosed under *Abbasi* is a complex legal issue that would benefit from briefing by

7

attorneys. The Court declines to address the proper application of *Abbasi* in this Order, and allows Count 1 to proceed for further review at this time against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust.

***Count 2***

This claim also rests on the First Amendment but seeks injunctive relief rather than damages. The *Abbasi* Court noted that the availability of alternative forms of relief was one of the factors counseling against the extension of the damages remedy. *Abbasi*, 137 S. Ct. at 1858 ("if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action"). In *Smadi*, the Court noted that declaratory or injunctive relief could be available to remedy the mail restrictions complained of there, in the form of an official capacity claim against the BOP. *Smadi*, 2021 WL 2853262, at *5. The Supreme Court allowed an equitable action for such relief against a federal agency to proceed in *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988). Declaratory and injunctive relief may similarly be pursued against a high-ranking federal agency official in his or her official capacity. *See White v. Sloop*, 772 F. App'x 334, 336 (7th Cir. 2019) (citing *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005)). Judicial review of an agency's action is also available in some circumstances under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701(a), 701; *see White v. True*, 833 F. App'x 15, 17 (7th Cir. 2020) (assuming court may review under the APA a claim that the BOP arbitrarily applied its mail restriction policy to inmate-plaintiff).

Here, Plaintiff brings his claims for injunctive and declaratory relief against Defendants in their official capacity; he does not invoke the APA. (Doc. 1-1, p. 5). An official capacity claim against a "high-ranking official" becomes a claim against the federal agency. Here, the Defendants include seven individuals of various ranks at Marion and within the BOP, not all of whom are

necessary parties to this official capacity claim against the BOP. While Count 2 is not subject to dismissal under the above authority at this early stage, it will proceed only against Warden Sproul and Counter Terrorism Chief Pagli in their official capacities. Defendants Hill, LeClair, Siereveld, Wyatt, and Faust will be dismissed from Count 2.

*Count 6*

Count 6 also seeks injunctive relief, here against BOP Director Carvahal in his official capacity, to eliminate the policy prohibiting BOP inmates from receiving letters from pretrial detainees in other institutions. This claim may be cognizable under *Bowen v. Massachusetts* and/or the APA, therefore, it will also receive further review.

### Fifth Amendment Due Process Claims - Counts 3 and 4

*Count 3*

Plaintiff's Fifth Amendment due process count for blocking his correspondence without notice or opportunity to respond is not cognizable as a *Bivens* claim. The Seventh Circuit declined to recognize a new theory of relief in a *Bivens* action premised on due process violations because the prisoner had alternative remedies through the BOP's administrative remedies program. *See Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018). The availability of a mechanism for relief under the APA similarly precludes a *Bivens* claim. *White v. True*, 833 F. App'x 15, 18 (7th Cir. 2020) (affirming dismissal under § 1915A of Fifth Amendment damages claim for restriction on prisoner's correspondence with daughter). Similarly, other Courts have declined to extend *Bivens* to due process claims. *See Vega v. United States*, 881 F.3d 1146, 1154-55 (9th Cir. 2018) (declining to recognize *Bivens* action for due process violation); *Harris v. Dunbar*, Case No. 17-cv-536-WTL, 2018 WL 3574736, at *3-4 (S.D. Ind. July 25, 2018) (declining to recognize *Bivens* action for due process violation in continued CMU placement). As to the special factors, Plaintiff has access to

alternative remedies such as the BOP's administrative grievance procedures. For these reasons, the Court declines to extend *Bivens* to Plaintiff's due process claim for damages. Count 3 will be dismissed with prejudice.

*Count 4*

Plaintiff seeks injunctive relief to lift the block on correspondence imposed by Defendants and requiring them to notify him if they decide to block a contact in the future. The discussion under Count 2 above is applicable here, as this claim does not seek monetary damages.

At this juncture, Count 4 is not subject to dismissal under § 1915A, for the same reasons discussed under Count 2. However, Count 4 will also proceed only against Warden Sproul and Counter Terrorism Chief Pagli in their official capacities. Defendants Hill, LeClair, Siereveld, Wyatt, and Faust will be dismissed from Count 4.

**Fifth Amendment Equal Protection Claim - Count 5**

The Supreme Court in *Davis v. Passman*, 442 U.S. 228 (1979), extended the *Bivens* remedy to a gender discrimination claim for damages brought pursuant to the Fifth Amendment. The Court stated, "[i]n numerous decisions, this Court 'has held that the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws.'" *Davis*, 442 U.S. at 234 (quoting *Vance v. Bradley,* 440 U.S. 93, 95 n. 1 (1979)) (collecting cases). The Court held that the equal protection component of the Due Process Clause confers a federal constitutional right to be free from gender discrimination that is not "substantially related" to achievement of important governmental objectives. *Davis*, 442 U.S. at 234-35.

The reasoning in *Davis* may be applied to an equal protection claim for discrimination on the basis of race. *See Marshall v. Kleppe*, 637 F.2d 1217, 1220-21 (9th Cir. 1980) (Fifth Amendment racial discrimination claim for damages is cognizable pursuant to *Davis*); *but see*

10

*Jones v. Reagan*, 696 F.2d 551 (7th Cir. 1983) (damages are not an appropriate method of enforcing constitutional rights allegedly violated by racially biased transfers of reserve military personnel). At this early stage, Plaintiff's equal protection claim for race-based discrimination is not subject to dismissal. Count 5 will proceed for further consideration against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust.

### Tort Claims – Counts 7, 8, and 9

As discussed above, the United States will be substituted as Defendant for each of these claims, and they will proceed under the Federal Tort Claims Act.

Count 7 alleges a civil conspiracy among the named federal officials to unlawfully block Plaintiff's communications with his common law wife. Under Illinois law, to prevail on such a claim, a Plaintiff must show: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). Here, Plaintiff asserts that several BOP officials agreed to ban his communications, such ban was unlawful, and they implemented the ban. These allegations are sufficient at this stage for Count 7 to proceed.

Count 8 claims the above acts were negligent. In Illinois, in order to state a claim for negligence, a complaint must allege facts to establish that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011). Plaintiff states that the BOP officials had a duty to refrain from unlawfully blocking his communications and a duty to provide him with notice of their action, breached these duties, thereby causing him injury. Count 8 is not subject to

dismissal at this juncture.

Count 9 asserts the communications ban amounted to intentional infliction of emotional distress. Here, he must show that the BOP officials acted in an extreme and outrageous way, intending to inflict severe emotional distress or knowing there was a high probability that would occur, and causing the plaintiff severe emotional distress. *See Doe v. Calumet City*, 641 N.E.2d 498, 506-07 (Ill. 1994) (citing Restatement (Second) of Torts § 46, comment d (1965)). Plaintiff explains that his common law wife is his primary contact with the outside world as well as the caretaker of his family members, thus the loss of ability to communicate with her has been distressing in the extreme. He claims the officials who imposed the ban knew their action would cause such distress. Count 9 will also proceed for further consideration.

## PENDING MOTION

Defendants' Motion to Substitute the United States of America as Defendant (Doc. 6) is **DENIED IN PART** as to the claims in Counts 1-6, and is **GRANTED IN PART** as to Counts 7-9. The Clerk of Court is **DIRECTED** to **ADD** the United States as a party. Going forward, Counts 7-9 will proceed against the United States only, as Federal Tort Claims. The individual Defendants are **DISMISSED** from Counts 7-9.

## DISPOSITION

**IT IS HEREBY ORDERED** that Count 3 of the Complaint is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Count 1 and Count 5 shall proceed against Hill, Sproul, LeClair, Pagli, Siereveld, Wyatt, and Faust. Count 2 and Count 4 shall proceed only against Defendants Sproul and Pagli in their official capacities. Count 6 shall proceed against Defendant Carvahal in his official capacity. Counts 7, 8, and 9 shall proceed only against the United States.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form

USM-285 for service of process on Defendants Hill, Sproul, LeClair, Pagli, Siereveld, Carvahal, Wyatt, Faust, and the United States; the Clerk shall issue the completed summons. The United States Marshals **SHALL** serve Defendants Hill, Sproul, LeClair, Pagli, Siereveld, Carvahal, Wyatt, Faust, and the United States pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed without payment of fees was granted by the state court. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days**

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/31/2022**

<u>*s/J. Phil Gilbert*</u>
**J. PHIL GILBERT**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.